SEDGWICK, DETERT, MORAN & ARNOLD LLP
BRUCE D. CELEBREZZE  Bar No. 102181
MARK J. HANCOCK Bar No. 160662
bruce.celebrezze@sdma.com
mark.hancock@sdma.com
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, California 94105
Telephone: (415) 781-7900
Facsimile: (415) 781-2635

Attorneys for Plaintiff
ACE AMERICAN INSURANCE COMPANY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation,<br><br>Plaintiff,<br><br>v.<br><br>TECH LOGISTICS CORPORATION, d/b/a SYSTEMS LOGISTICS SERVICES, a Texas Corporation; SYSTEMS LOGISTICS, INC.; AGRI-COMM EXPRESS, INC., a California Corporation; TRUCKING EQUIPMENT COMPANY, INC., a Wisconsin Corporation; and ELISEO ONTIVEROS VALDEZ, an individual,<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT FOR RESCISSION, DECLARATORY JUDGMENT, AND REIMBURSEMENT OF DEFENSE FEES AND COSTS AND INDEMNITY**<br><br>[JURY DEMAND INDORSED HEREON Fed.R.Civ.P. 38] |

NOW COMES plaintiff ACE American Insurance Company ("ACE") and, for its complaint, alleges as follows:

JURISDICTION AND VENUE

1.  Jurisdiction of this action is founded upon 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

-1-
COMPLAINT FOR RESCISSION, DECLARATORY JUDGMENT, AND REIMBURSEMENT
OF DEFENSE FEES AND COSTS AND INDEMNITY

2. Venue is proper in the Eastern District of California pursuant to 28 U.S.C. §§ 1391(a) and (c) in that the defendants are subject to personal jurisdiction in this district at the time the action is commenced and a substantial part of the events giving rise to the claim occurred in this district.

## PARTIES

3. ACE is a corporation organized and incorporated under the laws of the State of Pennsylvania, with its principal place of business in Philadelphia, Pennsylvania.

4. Tech Logistics Corporation, d/b/a/ Systems Logistics Services ("Tech Logistics") was and is a corporation organized and incorporated under the laws of the State of Texas with its principal place of business in the State of Minnesota.

5. Systems Logistics, Inc. was and is a business organization, form unknown. On information and belief, Systems Logistics, Inc. is another name for Tech Logistics Corporation as identified in paragraph 4 herein.

6. Agri-Comm Express, Inc. was and is a California corporation and ACE is informed and believes, and on that basis alleges, that its principal place of business in Gustine, California.

7. Trucking Equipment Co., Inc. ("TEC") is or was a business organization, form unknown. On information and belief, TEC is or was a Wisconsin corporation.

8. Eliseo Ontiveros Valdez was, and is, a resident of Tulare County, California.

## GENERAL ALLEGATIONS

**Tech Logistics' 2008 Insurance Application and Policy Issuance**

9. In July 2008 Tech Logistics applied to ACE for an excess liability insurance policy.

10. On or about July 18, 2008, Tech Logistics' wholesale insurance broker, AmWINS Group, Inc. ("AmWINS"), submitted to ACE's Program Agent, Jeffrey L. Heath Inc., known as Heath XS ("Heath"), a Commercial Insurance Application for insurance for an excess liability policy. The Commercial Insurance Application was on an Acord form and shall hereafter be referred to as the "Acord Application." The Acord Application was signed by Tech Logistics'

-2-
COMPLAINT FOR RESCISSION, DECLARATORY JUDGMENT, AND REIMBURSEMENT
OF DEFENSE FEES AND COSTS AND INDEMNITY

retail insurance broker, Duane R. Wolff of Wolff Agency, Inc., and a copy was later submitted to Heath XS bearing the signature of Brad Johansson on behalf of Tech Logistics. A true and correct copy of the Acord Application bearing what ACE is informed and believes to be Mr. Johansson's signature is attached hereto as **Exhibit A** and incorporated herein by reference.

11. On July 18, 2008, AmWINS provided the following information about Tech Logistics in an email which accompanied the Acord Application:

> The insured hauls motor oil in oil drums, small boxes and small cans in van trailers. Each location has a van trailer. They also haul lubricating oil to manufacturers. They are principally within a 100 mile radius of each location: Beaumont, TX, Phoenix, Denver, and Eagan, MN. They do not do much running east of the Mississippi.

12. In the "General Information" section of the Acord Application, the applicant is asked: "1b. Does the applicant have any subsidiaries?" In response, Tech Logistics responded, "no".

13. In question 18 of the "Umbrella/Excess Section" of the Acord Application, the applicant is asked to identify the "property hauled". In response, Tech Logistics listed "Fresh motor oil".

14. Also on or about July 18, 2008, AmWINS submitted to Heath a supplemental "Trucking Application" on a Heath form (the "Supplemental Application"). A copy of the Supplemental Application was later submitted to Heath XS bearing the signature of Brad Johansson on behalf of Tech Logistics. A true and correct copy of the Supplemental Application bearing what ACE is informed and believes to be Mr. Johansson's signature is attached hereto as **Exhibit B** and incorporated herein by reference.

15. In the "General Information" section of the Supplemental Application, the applicant is asked to provide, "Names of any other affiliated companies to be included for insurance and operations (Attach an explanation of the Relationship and operations of each entity.)." Tech-Logistics provided no information in response to this inquiry.

16. In the "General Information" section of the Supplemental Application, the applicant is asked: "Are you a subsidiary?" In response, Tech Logistics checked the "no" box.

COMPLAINT FOR RESCISSION, DECLARATORY JUDGMENT, AND REIMBURSEMENT OF DEFENSE FEES AND COSTS AND INDEMNITY

17. In the section of the Supplemental Application asking the applicant to list its "Terminal Locations" and "Fleet % by location" Tech Logistics provided the following information:

| Terminal Locations | Fleet % by location |
|---|---|
| Beaumont, TX | 25% |
| Eagan, MN | 25% |
| Phoenix, AZ | 25% |
| Denver, CO | 25% |

18. In a section on page 2 of the Supplemental Application entitled "Commodities Hauled (Please be Specific)", Tech Logistics provided the following information:

| | Commodity | % of Total Revenue | Major Shipper |
|---|---|---|---|
| 1. | Motor oil | 30 | Chevron |
| 2. | MFG | 70 | Chevron |

19. In a section on page 2 of the Supplemental Application entitled "Radius of Operations", Tech Logistics provided the following underlined figures:

"Trucking Radius as a %:

0-50 miles <u>20</u> %   51-20 miles <u>60</u> %   201-400 miles <u>10</u> %   401+ miles <u>10</u> %"

20. In the "Radius of Operations" section of the Supplemental Application the applicant is asked, "What is your maximum length of haul?" and Tech Logistics responded by stating "500" miles.

21. In a section on page 2 of the Supplemental Application entitled "Fleet Equipment", Tech Logistics stated that it had "24" tractors, "4" "Dry Van" trailers, and "20" "Tank" trailers.

22. In a section of the Supplemental Application asking for the applicant's "Projections for the Coming Policy Year", Tech Logistics provided the following information which is in quotations:

-4-
COMPLAINT FOR RESCISSION, DECLARATORY JUDGMENT, AND REIMBURSEMENT
OF DEFENSE FEES AND COSTS AND INDEMNITY

| Period (Month/Year) | Avg. Revenue Units | Total Revenue | Total Mileage |
|---|---|---|---|
| "7/08 – 7/09" | "24" | | "3,685,000" |

This mileage figure seemed high to Heath in light of the number of units Tech Logistics said it operated. Accordingly, Heath asked AmWINS to provide an explanation of the mileage figure. In response, AmWINS, on behalf of Tech Logistics, advised Heath that the correct annual mileage driven by Tech Logistics' trucks was 1,500,000.

23. On July 25, 2008, based on the representations made by Tech Logistics and its agents and representatives, ACE issued an Excess Liability Policy to named insured Tech Logistics, identified in the policy as "Systems Logistics, Inc.," for the policy period July 18, 2008 to July 1, 2009, and designated the policy as no. XCP N04313732 ("the Excess Policy"). The Excess Policy contains a liability limit of $4,000,000. A true and correct copy of the Excess Policy and is attached hereto as **Exhibit C** and incorporated herein by reference.

24. The Excess Policy was excess to a Carolina Casualty Insurance Company Commercial Transportation Policy No. CGT-350941-P issued to named insured "Tech Logistics Corp. dba Systems Logistics, Inc." for the period July 1, 2008 to July 1, 2009 (the "Primary Policy"). The Primary Policy contains a liability limit of $1,000,000.

25. The Excess Policy provided coverage pursuant to all of the terms, conditions, exclusions, and limits of insurance contained therein.

### The Garcia v. Valdez Action

26. On April 8, 2009, a civil action for wrongful death was filed by Concepcion Garcia and Quetzal Garcia (by and through his guardian ad litem) against Eliseo Ontiveros Valdez ("Valdez") and other defendants, entitled, *Garcia v. Valdez, et al.*, Superior Court of Tulare County, California, Case No. 09-232230 ("the Underlying Action"). The Underlying Action arises out of two separate collisions which took place on the morning of December 11, 2008 near the intersection of Road 152 and Avenue 136 in Tulare County, California in foggy conditions. The collisions resulted in the death of one person, Gerardo Garcia Gutierrez. The surviving spouse and the son of the decedent are the plaintiffs in the Underlying Action.

27. The First Amended Complaint (the "Garcia FAC") currently is the operative complaint in the Underlying Action. Defendants named in the Garcia FAC include, but are not limited to, "Tech Logistics Corporation, doing business as Systems Logistics Services", "Agri-Comm Express, Inc., a California Corporation" ("Agri-Comm"), Eliseo Ontiveros Valdez ("Valdez"); and Trucking Equipment Company, Inc. ("TEC"). The Garcia FAC alleges that Valdez negligently operated a semi-truck pulling two trailers (hereafter, "Tractor/trailers") and thereby allegedly caused the death of the decedent. (Garcia FAC, ¶¶18, 19.)

28. The Garcia FAC further alleges that Valdez was an agent and employee of defendant Agri-Comm, and that in doing the acts alleged was acting in the course and scope of his authority as agent and employee of Agri-Comm. (Garcia FAC, ¶8.) The Garcia FAC alleges that Trucking Equipment Company, Inc. "owned the alleged Tractor/trailers and had entrusted them to" Valdez. (Garcia FAC, ¶26.) The Garcia FAC likewise alleges that Tech Logistics "owned the alleged Tractor/trailers and had entrusted them to" Valdez. (Garcia FAC, ¶29.)

29. A true and correct copy of the Garcia FAC is attached hereto as **Exhibit D**.

30. The defendants in the present action have tendered the defense and indemnity of the claims in the Underlying Action to ACE.

### Relationship Between Tech Logistics and Agri-Comm

31. ACE is informed and believes, and on that basis alleges, that at all material times Agri-Comm is and has been a subsidiary of Tech Logistics. Tech Logistics did not disclose this to ACE in the Acord Application or in the Supplemental Application.

32. ACE is informed and believes, and on that basis alleges, that Valdez was employed by Agri-Comm at the time he was involved in the collision alleged in the Underlying Action. ACE is also informed and believes, and on that basis alleges, that the vehicle being driven by Valdez was being operated under the authority of Agri-Comm, including under Agri-Comm's Department of Transportation number.

33. ACE is informed and believes, and on that basis alleges, that the products/commodities hauled by Agri-Comm consist of agricultural products, and not motor oil and related products.

34. ACE is informed and believes, and on that basis alleges, that Agri-Comm has one or more terminals in the State of California, including one in Gustine, California.

35. ACE is informed and believes, and on that basis alleges, that at all material times, Tech Logistics has regarded the trucking operations of Agri-Comm to be part of its own trucking operations.

### FIRST CLAIM FOR RELIEF

(Rescission – California Insurance Code § 330, *et seq.* --

Against Defendants Tech Logistics and Systems Logistics, Inc.)

36. For its first claim for relief, ACE incorporates herein by reference, as if fully restated, paragraphs 1-35 above.

37. The questions asked by ACE (though its Program Agent, Heath) in the Acord Application, in the Supplemental Application, and in follow-up to such applications were important and material to ACE in determining whether Tech Logistics was a risk that ACE was willing to undertake for the policy period at issue and what premium would be appropriate to charge for the coverage provided.

38. ACE is informed and believes, and on that basis alleges, that Tech Logistics failed to disclose, misrepresented, or concealed material information in the Acord Application, in the Supplemental Application, and in response to questions asked in follow-up to such applications, including, but not limited to, questions pertaining to the following:

   a. Whether Tech Logistics had any subsidiaries;
   b. The type of property/commodities hauled by Tech Logistics;
   c. The names of affiliated companies included in Tech Logistics' operations;
   d. The locations of Tech Logistics' terminals;
   e. The location of Tech Logistics' fleet;
   f. The radius of Tech Logistics' operations;
   g. The description of Tech Logistics' fleet equipment; and

h. The estimated number of miles driven annually by Tech Logistics' fleet.

39. ACE is informed and believes, and on that basis alleges, that Tech Logistics' responses to questions in the Acord Application, the Supplemental Application, and in response to questions asked in follow-up to such applications were false or materially incomplete. With respect to the questions referenced in the preceding paragraph of this complaint, the responses were false or materially incomplete in that responses failed to disclose, misrepresented, or concealed the following information:

   a. That Agri-Comm was a subsidiary of Tech Logistics;
   b. The type of property/commodities hauled by Agri-Comm, which included agricultural products;
   c. That Tech Logistics regarded Agri-Comm to be included in Tech Logistics' operations;
   d. The locations of Agri-Comm's terminals, which included, but was not limited to, a terminal in Gustine, California;
   e. The location of Agri-Comm's fleet, which included Gustine, California and other areas of California;
   f. The radius of Agri-Comm's operations, which exceeded the disclosed radius of Tech Logistics' operations and included the location of the collision alleged in the Underlying Action;
   g. The description of Agri-Comm's fleet equipment, which was different in number and type than Tech Logistics fleet equipment; and
   h. The estimated number of miles driven annually by Agri-Comm's fleet of vehicles, which was not disclosed to ACE.

40. ACE is informed and believes that Tech Logistics knew that responses it provided, including those referenced above, to the Acord Application, the Supplemental Application and in response to questions asked in follow-up to such applications were incorrect

-8-
COMPLAINT FOR RESCISSION, DECLARATORY JUDGMENT, AND REIMBURSEMENT OF DEFENSE FEES AND COSTS AND INDEMNITY

or incomplete. Had ACE known that Tech Logistics' responses to the Acord Application, the Supplemental Application, and in response to questions asked in follow-up to such applications concealed facts and included misrepresentations, ACE would not have issued the Excess Policy, or would have issued the Excess Policy subject to materially different terms and conditions.

41. ACE intends service of the Summons and Complaint in this action to serve as formal notice of rescission of the Excess Policy, and hereby offers to restore any insurance premiums paid for the policy to Tech Logistics, together with interest at the legal rate.

42. ACE seeks an order rescinding the Excess Policy issued to Tech Logistics, in the name of "Systems Logistics, Inc.", so that it is null and void *ab initio*.

### SECOND CLAIM FOR RELIEF

(Declaratory Judgment -- No Duty to Defend Against the
Claims in the Underlying Action -- Against Agri-Comm, TEC and Valdez)

43. For its second claim for relief, ACE incorporates herein by reference, as if fully restated, paragraphs 1-42 above.

44. Section I.C ("Insuring Agreements") of the Excess Policy provides, in part, as follows:

C. DEFENSE PROVISIONS AND SUPPLEMENTAL PAYMENTS

1. DEFENSE PROVISIONS

When insurance is available to the INSURED in any UNDERLYING INSURANCE, WE shall not be called upon to assume charge of the investigation, settlement or defense of any SUIT brought against the INSURED . . . .

WE will assume charge of the settlement or defense of any SUIT brought against the INSURED to which this policy applies and to which no UNDERLYING INSURANCE applies because of the exhaustion of aggregate limits of insurance.

45. In order for ACE to owe a duty to defend against the claims made in the Underlying Action, the aggregate limits of the Primary Policy must be exhausted. The aggregate limits of the Primary Policy have not been exhausted, and even should they become exhausted,

ACE would not owe a duty to defend to Agri-Comm, TEC, or Valdez because none of them is a named insured under the Excess Policy.

46. Section I.D ("Insuring Agreements") of the Excess Policy provides as follows:

D. PERSONS INSURED

1. The INSURED is the organization(s) named in the Declarations of this policy and includes:

   a. any subsidiary (including subsidiaries thereof) and any other organization under YOUR control and active management at the inception date of this policy, providing such subsidiary or organization is included as an INSURED in the UNDERLYING INSURANCE, and was made known to US prior to, or at the inception date of this policy;

   b. any organization(s) included as an INSURED in the UNDERLYING INSURANCE that YOU newly acquire or form, other than a partnership or joint venture, and over which YOU maintain ownership or majority interest, will qualify as an INSURED; however:

      1. Coverage under this provision applies only until the 90th day after YOU acquire or form the organization or the end of the policy period, whichever is earlier, unless within that time frame:

         (a) YOU request US to include such organization as an INSURED, and

         (b) WE agree to do so;

      2. Coverage does not apply to any liability arising out of an OCCURRENCE or offense committed before YOU acquired the organization;

   c. any person or organization included as an Additional Insured in the

-10-
COMPLAINT FOR RESCISSION, DECLARATORY JUDGMENT, AND REIMBURSEMENT
OF DEFENSE FEES AND COSTS AND INDEMNITY

UNDERLYING INSURANCE and for the full limits of liability shown therein.

Notwithstanding anything to the contrary contained above, coverage does not apply to any liability arising out of the conduct of any current, past, or newly acquired or formed partnership or joint venture that is not stated in the Declarations of this policy as an INSURED.

47. In order for ACE to owe a duty to defend against the claims made in the Underlying Action, the aggregate limits of the Primary Policy must have been exhausted and a person must be a named insured under the Excess Policy.

48. An actual controversy has arisen and now exists between ACE on the one hand, and defendants Agri-Comm, TEC and Valdez on the other, as to whether ACE has any obligation to pay for the defense of these defendants in connection with the Underlying Action. Specifically and without limitation, ACE contends that it has no obligation to pay for the defense of Agri-Comm, TEC and Valdez in connection with the Underlying Action because the aggregate limits of the Primary Policy have not been exhausted and, even if such limits should become exhausted, these defendants are not named insureds under the Excess Policy.

49. ACE is informed and believes and thereon alleges that Agri-Comm, TEC and Valdez contend that ACE is obligated under the Excess Policy to defend and pay defense costs in relation to the Underlying Action.

50. ACE requests a judicial declaration that it is not obligated to defend Agri-Comm, TEC and Valdez or reimburse defense costs with respect to the claims made in the Underlying Action. Alternatively, if the court finds that a duty to defend is owed in the Underlying Action, then ACE seeks an allocation of defense fees and costs between covered and non-covered claims pursuant to the holding of *Buss v. Superior Court*, 16 Cal.4th 35, 65 Cal.Rptr.2d 366, 939 P.2d 766 (1997).

### THIRD CLAIM FOR RELIEF

(Declaratory Judgment -- No Duty to Indemnify with Respect to the Claims in the Underlying Action -- Against Agri-Comm, TEC and Valdez)

51. For its third claim for relief, ACE incorporates herein by reference, as if fully restated, paragraphs 1-50 above.

52. Section I.A. ("Insuring Agreements") of the Excess Policy provides, in part, as follows:

A.   COVERAGE

This insurance only applies to injury or damages covered by the UNDERLYING INSURANCE, and that takes place during OUR policy period. WE will pay on YOUR behalf the ULTIMATE NET LOSS in excess of the applicable limits of the UNDERLYING INSURANCE listed in the attached Schedule of UNDERLYING INSURANCE (whether such insurance is collectible or not). If the UNDERLYING INSURANCE does not pay a loss for reasons other than the exhaustion of an aggregate limit of insurance, then we shall not pay such loss.

53. In order for ACE to owe a duty to indemnify with respect to the claims made in the Underlying Action, the aggregate limits of the Primary Policy must have been exhausted and a person must be a named insured under the Excess Policy.

54. An actual controversy has arisen and now exists between ACE on the one hand, and defendants Agri-Comm, TEC and Valdez on the other, with respect to the rights, duties and obligations under Excess Policy. ACE contends that it has no obligation under the Excess Policy to indemnify Agri-Comm, TEC or Valdez in connection with the Underlying Action because the aggregate limits of the Primary Policy have not been exhausted and, even if such limits should become exhausted, these defendants they are not named insureds under the Excess Policy.

55. ACE requests a judicial declaration that it is not obligated to indemnify Agri-Comm, TEC and Valdez under the Excess Policy with respect to the claims made in the Underlying Action.

-12-
COMPLAINT FOR RESCISSION, DECLARATORY JUDGMENT, AND REIMBURSEMENT
OF DEFENSE FEES AND COSTS AND INDEMNITY

FOURTH CLAIM FOR RELIEF

(Reimbursement of Defense Fees and Costs and Indemnity)
(Against All Defendants)

56. For its fourth claim for relief, ACE incorporates herein by reference, as if fully restated, paragraphs 1-55 above.

57. In light of the fact that all of the costs and fees incurred in the defense of the defendants against the claims made in the Underlying Action and any indemnity which may be paid in connection with a resolution of the Underlying Action are not the responsibility of ACE inasmuch as the Excess Policy is rescinded, and even if not rescinded there is no coverage for the claims against the defendants in the Underlying Action and in the event ACE ever pays any fees, costs, or indemnity in connection with the Underlying Action, ACE is entitled to full and complete reimbursement of all such fees, costs, and indemnity incurred or to be incurred in connection with the Underlying Action.

58. Pursuant to *Scottsdale Ins. Co. v. MV Transportation*, 36 Cal.4th 643, 31 Cal.Rptr.3d 147, 115 P.3d 460 (2005), and *Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal.4th 489, 106 Cal.Rptr.2d 535, 22 P.3d 313 (2001), and other cases, ACE is entitled to recover damages from the defendants by way of reimbursement of all fees, costs, and indemnity incurred or to be incurred in connection with the Underlying Action in a sum which will be proved at trial.

WHEREFORE, plaintiff ACE American Insurance Company prays for relief as follows:

1. For a judgment that the ACE Excess Liability Policy issued to Tech Logistics Corporation, d/b/a Systems Logistics Services is rescinded and null and void *ab initio* because of Tech Logistics Corporation's misrepresentations and concealments of material facts from ACE;

2. For a judgment that the rescission of the Excess Policy bars any and all coverage under that policy;

3. For a judgment that, in the event the Excess Policy is not rescinded, then by reason of the terms, conditions, and exclusions in the Excess Policy, no

duty to defend or indemnify is owed to Agri-Comm Express, Inc., Trucking Equipment Company, Inc., or Eliseo Ontiveros Valdez;

4. For a judgment that ACE is entitled to restitution and reimbursement from Tech Logistics Corporation, Agri-Comm Express, Inc., Trucking Equipment Company, Inc, or Eliseo Ontiveros Valdez for any and all sums expended in defense or settlement of the claims against Tech Logistics in the Underlying Action;

5. On all causes of action, for interest, including prejudgment interest;

6. On all causes of action, for costs herein; and

7. For such other and further relief as the Court deems to be just and proper.

DATED: March 19, 2010    SEDGWICK, DETERT, MORAN & ARNOLD LLP

By: _____
BRUCE D. CELEBREZZE
MARK J. HANCOCK
Attorneys for Plaintiff
ACE AMERICAN INSURANCE COMPANY

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff ACE American Insurance Company hereby demands a jury trial for this action.

DATED: March 19, 2010    SEDGWICK, DETERT, MORAN & ARNOLD LLP

By: _____
BRUCE D. CELEBREZZE
MARK J. HANCOCK
Attorneys for Plaintiff
ACE AMERICAN INSURANCE COMPANY

-14-
COMPLAINT FOR RESCISSION, DECLARATORY JUDGMENT, AND REIMBURSEMENT OF DEFENSE FEES AND COSTS AND INDEMNITY